BARNETT *v.* KELSEY-HAYES WHEEL COMPANY.

1. WORKMEN'S COMPENSATION—SPECIFIC INJURIES.
   The right to workmen's compensation and the amount thereof
   for specific injuries are purely statutory (CL 1948, § 412.10).

2. SAME—TOTAL DISABILITY—INDUSTRIAL USE OF HANDS—EVI-
   DENCE.
   Workmen's compensation commission's award to plaintiff punch
   press operator for permanent and total disability due to loss
   of industrial use of both hands because of amputation of dis-
   tal ends of the 3 metacarpal bones of the middle, ring and
   little fingers and substantial impairment of index finger be-
   cause of partial ankylosis of the metacarpal phalangeal junc-
   tion and a deviation away from the thumb but which injury
   did not destroy the use of the palms *held,* error, where un-
   disputed facts show plaintiff has not lost the industrial use
   of both hands (CL 1948, § 412.10).

Appeal from Workmen's Compensation Commis-
sion.   Submitted April 12, 1950.   (Docket No. 55,
Calendar No. 44,578.)   Decided June 5, 1950.

Brown Barnett presented his claim against Kel-
sey-Hayes Wheel Company, employer, for compen-
sation for alleged total disability.   Award to plain-
tiff.   Defendant appeals.   Reversed.

REFERENCES FOR POINTS IN HEADNOTES
[1]   58 Am Jur, Workmen's Compensation, §§ 2, 281.
[2]   58 Am Jur, Workmen's Compensation, §§ 287, 288.
[2]   What amounts to total incapacity within workmen's compen-
      sation acts.   67 ALR 785; 98 ALR 729.
[2]   What amounts to loss of member within meaning of workmen's
      compensation acts.   18 ALR 1350.
[2]   Loss of use of member as loss of member within workmen's
      compensation acts.   149 ALR 449.

*Marcus, Kelman & Loria* and *J. Leonard Hyman*, for plaintiff.

*Lacey, Scroggie, Lacey & Buchanan*, for defendant.

Carr, J. While working in the employ of the defendant on September 27, 1944, plaintiff's hands were caught under a punch press, resulting in severe injuries. Amputations were subsequently performed proximal to the distal heads of the metacarpals to the middle, ring and little fingers on the right hand. The testimony of a medical expert produced as a witness in plaintiff's behalf disclosed that the section removed from the metacarpal to the middle finger was less than the corresponding amputations of the metacarpals leading to the ring and little fingers. The index finger was not amputated, but the ability to move such finger is substantially impaired due to a partial ankylosis of the metacarpal phalangeal junction and a deviation away from the thumb. The left hand is in a similar condition. The plaintiff's thumbs were not injured, and he has normal use of them.

Following his injuries plaintiff was paid compensation for a period of 3 weeks for general disability prior to the amputations. Thereafter he was compensated at the rate of $21 per week for 130 weeks for the loss of the fingers. On March 10, 1948, subsequent to completion of such payments, plaintiff made application under the provisions of the workmen's compensation law* for adjustment of claim, seeking compensation for the loss of the industrial use of both hands and permanent and total disability resulting therefrom within the meaning of part 2, § 9 of the act (CL 1948, § 412.9 [Stat Ann 1947 Cum

---

* PA 1912 (1st Ex Sess), No 10, as amended (CL 1948, § 411.1 *et seq.* [Stat Ann § 17.141 *et seq.*]).

Supp § 17.159]). The amendment to said section made by PA 1949, No 238, is not involved in the case.

Following a hearing before a deputy commissioner an award was made to plaintiff for total disability for a period of 747 weeks. The workmen's compensation commission affirmed the order, allowing credit to the employer for the compensation previously paid. Leave having been granted on application, defendant has appealed.

Subsequent to the amputations of his fingers, plaintiff continued in defendant's employ. The record indicates that he was at first given light work, including the picking up of hammers, weighing 1 and 2 pounds, from the floor of the plant. Plaintiff testified before the deputy commissioner that he did this work by using his thumb and index finger on the right hand. For approximately 2 months plaintiff worked hooking up a crane used in defendant's operations. His testimony further indicates that he began work in defendant's foundry in 1945, and thereafter, for approximately 3 years prior to the hearing before the deputy commissioner, and at the time of such hearing, was employed on the so-called sand line. In performing his duties he used a lever to control the flow of sand on the conveyor. In manipulating such lever he used the palms of his hands, principally the right hand. Plaintiff's testimony as to such use was corroborated by the physician, who testified as to the condition of the hands, including the palms, at the time of the hearing. In such employment plaintiff's earnings were at least equal to his wages immediately prior to his injury. The testimony also discloses that plaintiff is able to sign his name, dress himself without assistance, and shave with a safety razor.

It is the claim of the appellant that the undisputed facts do not support the conclusion of the commission to the effect that plaintiff has suffered complete

loss of the industrial use of both hands. Reliance is placed on the decision of this Court in *Hlady* v. *Wolverine Bolt Company*, 325 Mich 23. There plaintiff sustained the loss of the 4 fingers of her right hand, for which she was paid specific compensation at the rate of $21 per week for 100 weeks. She then made application for further compensation on the ground that she had lost the industrial use of the hand. The commission sustained her claim and awarded compensation accordingly. This Court reversed the action of the commission, saying in part:

"The sole question presented is whether the commission was justified, under the circumstances of this case, in awarding compensation to plaintiff for the loss of her right hand notwithstanding she had already been paid in full the specific award for the loss of the 4 fingers of that hand.

"The record is devoid of testimony tending to prove that plaintiff has suffered any different or greater loss than normally results from the amputation of 4 fingers of a hand. Notwithstanding plaintiff claimed that the amputation of her fingers resulted in disabling 'sequelae' and 'general disability,' the commission found none except disability which normally follows such amputations. *Lovalo* v. *Michigan Stamping Co.*, 202 Mich 85, cited by and relied upon by the commission in making its award involved an entirely different injury than in the instant case. Lovalo not only lost 4 fingers but also the major portion of his hand; and it was because he lost the major portion of his hand in addition to the loss of the fingers that he was awarded compensation for the loss of his hand.

"The right to compensation and the amount thereof for specific injuries are purely statutory. To award plaintiff compensation for loss of a hand under this record would be in total disregard of the controlling statute. See CL 1929, § 8426, as amended

by PA 1943, No 245* (Stat Ann 1947 Cum Supp § 17.-160). As a matter of law the commission's award to plaintiff for the loss of a hand was erroneous, because there was no testimony that plaintiff's injury was other than the loss of 4 fingers of her right hand which resulted in no more than the normal impairment of industrial use which must always follow such amputations, or at least naturally and commonly results."

The decision in the *Hlady Case* was followed in *Utter* v. *Ottawa Metal Company*, 326 Mich 450. There both hands of the plaintiff were injured, necessitating the amputation of 2 phalanges from each of the first 3 fingers of the right hand, and the amputation of a portion of the distal phalange of the fourth finger. The left hand was in practically the same condition. Neither thumb was injured. The award of the compensation commission, based on the conclusion that plaintiff had lost the industrial use of both hands and was, in consequence, permanently and totally disabled, was reversed.

Counsel for plaintiff stress the rule that under the statute (CL 1948, § 413.12 [Stat Ann 1949 Cum Supp § 17.186]), findings of fact by the workmen's compensation commission are, in the absence of fraud, conclusive if supported by evidence. *Pigue* v. *General Motors Corporation*, 317 Mich 311; *Shaw* v. *General Motors Corporation*, 320 Mich 338. The undisputed facts, however, indicate that the plaintiff has not lost the industrial use of both hands. The extent of disablement in each hand is less than that sustained by the plaintiff in the *Hlady Case* to her right hand, and less than was suffered by the plaintiff in the *Utter Case*. It is apparent from the evidence that the amputation of the distal ends of the 3 metacarpal bones in each hand did not destroy use of the palms. The holdings in *Lovalo* v. *Michigan Stamping Co.*, 202

---

* CL 1948, § 412.10.—REPORTER.

Mich 85; *Rench* v. *Kalamazoo Stove & Furnace Co.,* 286 Mich 314, and *Rupp* v. *Hutter Construction Co.,* 288 Mich 105, on which plaintiff relies, are distinguishable on the facts.

The order of the workmen's compensation commission is reversed, and the case is remanded with directions to set aside the award. Defendant may have costs.

BOYLES, C. J., and REID, NORTH, DETHMERS, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.